Dale Edmund CROWDER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-77-623.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1979.

As Corrected Jan. 30, 1979.

Richard A. Hoffman, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Dale Edmund Crowder, hereinafter referred to as the defendant, was convicted of Robbery With Firearms, in the Tulsa County District Court, Case No. CRF-76-2067. The defendant was tried to a jury and sentenced to fifty-eight (58) years' imprisonment. From this judgment and sentence, the defendant has perfected an appeal to this Court.

On July 28, 1976, at approximately 4:00 p. m., the owner and two employees of Jean Anderson's Interiors were accosted by an armed robber. The victims were forced to lie on the floor and were bound together with wire. In the robbery, three women's billfolds and various merchandise was taken by the robber. On July 31, 1976, at approximately 12:30 a. m., the defendant was stopped by Kentucky State Police Trooper Gary Smith for having only one headlight on his automobile. During a routine check of the defendant's identity, Trooper Smith learned that the defendant was wanted for federal parole violation. After placing the defendant under arrest, Trooper Smith ordered a tow truck to the scene. Knowing that the defendant's vehicle would be locked up in a safe place, Trooper Smith testified he allowed the vehicle to be taken without inventorying its contents and at approximately 1:00 p. m. on August 1, 1976, prior to learning of the Tulsa robbery, he inventoried the contents of defendant's car. Among items found in the trunk were the stolen goods, mentioned above which were tagged "Jean Anderson Interiors, Limited," two guns, and a bag of makeup. After notifying the Tulsa police of the defendant's arrest, three photographs were sent to the Tulsa Police Department. The victims of the robbery were shown these photographs, and they identified the stolen merchandise, a briefcase similar to the one used by the robber, and the defendant. Prior to preliminary hearing, and five months after the robbery, the defense counsel presented a motion stating that he felt there was an identification problem and requested that the complaining witness for the State be compelled to attend a lineup. Only two of the three victims attended the lineup. One witness could not identify the defendant and the second witness stated that the defendant was nearer in physical build and facial features to the robber than the others in the lineup. Also, the robber had a mus-

tache and the defendant was the only person in the lineup with a mustache. At trial, neither of these witnesses was asked to identify the defendant, but the witness who did not attend the lineup identified the defendant as the one who committed the robbery.

Inasmuch as the defendant's first assignment of error raises a crucial issue, we also need to examine the legality of the seizure of the evidence. The defendant cites *City of Danville v. Dawson*, Ky., 528 S.W.2d 687 (1975), as the controlling authority of the State of Kentucky on inventory searches. The facts of that case were that the defendant, a resident of Danville, was arrested by Danville police officers for driving under the influence of alcoholic beverages. Rather than locking and leaving the car or allowing the defendant to make arrangements for care of the automobile, the police impounded the vehicle and conducted a standard inventory. Two cases of beer and a large quantity of whiskey were found in the trunk and as a result, additional charges were filed against the defendant. The court, in upholding the suppression of the evidence, discussed at length the "plain view" doctrine of *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and the reasonableness test of *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and held that the inventory involved here could not be justified under either case.

In conclusion, the court stated:

"The facts of this case do not bring it within the 'plain view' principle of *Harris* or the 'reasonableness' test of *Dombrowski.* Our view is that if it is reasonably necessary either to impound and store a vehicle or to leave it unattended, police officers may close and lock it, and that whatever they observe in plain view during that process may be used as evidence in support of any charge to which it may be relevant, but that the opening of or prying into compartments or containers within the vehicle constitutes a search, which in the absence of a warrant or of special circumstances as exemplified by

*Dombrowski* is in violation of the Fourth Amendment." (Emphasis original) 528 S.W.2d at 691

■ In the present case, the defendant was stopped for a traffic violation and then was arrested for federal parole violation. Officer Smith testified that the car had Missouri license plates and the car had stopped on the highway. We feel that these circumstances in combination with the fact that the defendant would be held for an indeterminate period of time for the federal authorities justified an inventory of the contents of defendant's car. In fact at trial, seven months later, Trooper Smith indicated that the defendant's automobile was still in the impound lot. We feel these factors bring the case within the special circumstances test of *Dombrowski*, as adopted by the State of Kentucky.

We also do not believe the 12 hour delay in inventorying the contents of the automobile is significant under these circumstances. Trooper Smith testified that the arrest of the defendant took place on the highway 30 minutes past midnight. After Trooper Smith was assured by the tow truck driver that the car would be locked inside his garage, he allowed the vehicle to be taken while he transported the defendant to the county jail. We believe that Trooper Smith was justified in returning later that day to conduct an inventory of the vehicle before it was placed on the lot. This being the case, we feel the trial court properly allowed admission of the evidence.

■ Because of our disposition of the defendant's fourth assignment of error, we will first treat the question therein raised. The defendant contends that the in court identification of the defendant was tainted by an earlier photo identification. This Court recently stated in *McDaniel v. State*, Okl.Cr., 576 P.2d 307 (1978), that:

"[I]mproper suggestiveness does not indicate conclusively that the in-court identification was unreliable, thereby requiring exclusion. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was

suggestive. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). . ." (Citation omitted)

In the present case, three photographs were shown to the victims of the robbery. The first photograph shown was that of the stolen goods, next was a picture of a briefcase similar to the one carried by the robber, and finally a single picture of the defendant was presented. It is hard to conceive of a more prejudicial method of presenting a photograph to witnesses for identification purposes. The natural inference which flows from this presentation is that we have the stolen goods and we also have the perpetrator. Under such circumstances, if the individual pictured bears a resemblance to the perpetrator there is a substantial likelihood of misidentification.

The problem of identification is further illustrated in this case by the fact that two of the victims viewed a pretrial lineup at which one victim could not identify the defendant and the second victim indicated that she was "reasonably positive" that the facial structure matched and that of the six men in the lineup, the defendant's build and features were closest to that of the robber. It should be noted that this witness waited on the robber for periods of five and three minutes just prior to the robbery, and appears to have had the best opportunity for observing him. The State apparently realized the weakness of this identification and did not require this witness to identify the defendant at trial. Instead, the State used the complaining witness, whom they failed to produce at the court ordered lineup, to identify the defendant during trial. This identification occurred seven months after the robbery and six and one-half months after the photograph identification. The viewing time of the witness consisted of the short initial confrontation at her desk and a short walk to the room where she was tied face down with the other victims. Applying a totality of the circumstances test to these facts, we feel the reliability of the in court identification is so suspect that it should have been excluded at trial. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). On retrial, the State may be able to present other identification evidence, i. e., the victims may be able to testify as to their recollection of the robber's appearance at the time of the robbery and relate any description of the robber which they may have given to the police, and the jury may then decide whether the defendant fits that description.

Therefore, for the reasons above stated, this conviction is *REVERSED* and *REMANDED* for a new trial.

CORNISH, P. J., concurs, and BUSSEY, J., specially concurs.

BUSSEY, Judge, specially concurring.

I agree that the case must be reversed and remanded for a new trial. The necessity for a reversal arose out of the over-zealous conduct of the Tulsa Police Department showing three photographs to the witnesses. Two of the photographs were photographs taken of fruits of the robbery, and the third was a photograph of the defendant. Two of the witnesses later failed to positively identify the defendant in a pretrial lineup and were not asked to do so at the trial. The only witness who identified the defendant as the robber during the trial had, for some reason not appearing in the record, failed to attend the pretrial lineup. The procedure thus employed was so highly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

The Tulsa Police Department has hundreds of photographs, some of which could have accompanied the single photograph of the defendant, and which could have been presented to the witnesses in a manner not so highly suggestive. Such was not done. Prosecutors and judges alike, in the pretrial identification proceeding conducted on the admissibility of such an identification, should employ the test for the reliability of such identification set forth in the very excellent opinion of Justice Blackmon in *Manson v. Brathwaite*, )432 U.S. 98, 53 L.Ed.2d 140, 97 S.Ct. 2243 (1977), citing *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972). The factors to be considered in establishing the reliability of the

identifying witness are: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of her prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

It is simply not enough to ask the witness if the identification was based upon the observation at the scene of the crime when the record is devoid of any fact, testimony or circumstance which demonstrates the reliability of the identification independent of the tainted pretrial identification. When the prosecutor has failed to elicit such information from the identifying witness in the hearing outside the presence of the jury, the court may in the search for truth, propound such questions as will be helpful in arriving at the truth. This record is devoid of any evidence from which we can establish that the in-court identification by the witness was based on the observations at the scene of the crime independent of the tainted photographic identification; and the trial court erred in permitting the witness to make the in-court identification of the defendant.