(600 P.2d 155)

No. 50,526

STATE OF KANSAS, *Appellant,* v. STEVEN A. MORGAN, *Appellee.*

Opinion filed September 28, 1979.

*Stuart W. Gribble* and *Kiehl Rathbun,* assistant district attorneys, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for appellant.

*David Michael Rapp,* of Moore & Rapp, of Wichita, for appellee.

Before FOTH, C.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: This is an interlocutory appeal brought by the State from a trial court order suppressing evidence in a criminal case involving the alleged possession of cocaine by Steven A. Morgan.

At some unspecified time on April 9, 1978, a Wichita police officer, Donald Perricone, received a radio dispatch to be on the lookout for a blue Volkswagen that had been involved in an accident, resulting in the loss of its right front door. Approximately ten minutes later, Officer Perricone observed a blue Volkswagen with the right front door missing and followed it for one block. The vehicle pulled into a parking lot and the driver entered a public building. Officer Perricone blocked the Volks-

wagen's access to the street. Within a very short time the defendant came out of the building and identified himself. He readily admitted his door had come open, after which he struck a bridge and lost the door. Officer Perricone testified he had not intended to arrest the defendant, and that his only intention had been to have the defendant complete an accident report. A record check was run on the defendant as a routine matter, and the dispatcher informed Officer Perricone that a bench warrant was outstanding from traffic court. At that time the defendant was sitting in the patrol car filling out an accident report. The evidence is in sharp conflict at this point. Unfortunately, the record before us consists only of the trial judge's comments and rulings and an *excerpt* from the testimony of the arresting police officer. None of the appellee's testimony is included in the record on appeal. Officer Perricone testified that he placed the defendant under arrest and the defendant became very agitated and asked, "What are you going to do with my car? Are you going to have somebody watch it? I've got valuable stuff in the car and I can't lock it up." The trial judge's comments reveal that the defendant denied making the statement and testified he was not placed under arrest until after the car was searched and contraband discovered. Officer Perricone testified he did not believe or have reason to suspect there was contraband in the vehicle; that he was merely following Wichita Police Department policy that if the driver of a vehicle is arrested, the vehicle is to be impounded and the arresting officer is to remove any valuable property he is told about or that he sees in the car and turn it in at the police station rather than allow it to remain in the car, since it is towed by a privately owned tow company. The trial judge was of the opinion the officer conducted the search in good faith, not to conceal an investigatory police motive. Officer Perricone was aware that the right front door was missing from the vehicle and he believed the glove compartment could not be locked. He made no inquiry of the defendant as to what valuables he was talking about or where they were located in the Volkswagen. Of some significance is the fact the trial judge suppressed a statement given by the defendant (an order not appealed from) based on the officer's testimony that the defendant was somewhat incoherent and "appeared like he was out of it," and that he was not sure the defendant fully understood his *Miranda* rights.

Officer Perricone looked inside the car and under the seats. He then opened the glove compartment and found five bags of cocaine in a wooden box. The trial court's decision to suppress the evidence was based largely upon its interpretation of *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975), and *South Dakota v. Opperman,* 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976). The State relies on the fact that the vehicle was lawfully impounded and that the inventory search which resulted in the discovery of the contraband was conducted in good faith.

It has heretofore been determined that an inventory search of an automobile is subject to the Fourth Amendment requirement of reasonableness, and the State has the burden of proof to show the lawfulness of a Fourth Amendment search and seizure. *State v. Boster* at 622-23. In addition, when the State takes an interlocutory appeal pursuant to K.S.A. 1978 Supp. 22-3603, the prosecution, not the clerk of the district court, has the responsibility of furnishing the record. Rule No. 4.02(b) (224 Kan. xxxix). When testimony is taken on a motion to quash or suppress, a copy of the transcript is to be filed with the appellate court unless the parties agree to file a narrative statement. Rule No. 4.02(b)(4). In addition, the suppressed evidence was discovered "in the box" which was removed from a closed glove compartment. The record is barren of evidence as to whether the box was locked or lockable. Indeed, one cannot tell from the record if the box had a top on it. The prosecutor has a duty under Rule No. 4.02(b)(2) to furnish a description of any physical evidence suppressed. The record does not contain the motion to suppress, thus we cannot tell whether or not the defendant requested that the box be suppressed. We do note, however, that the trial judge suppressed the evidence seized in the inventory search, and the State should have furnished a description of the box. We would be justified in affirming the trial court solely on the basis of the substantial failure of the State to comply with appellate rules; however, there exists yet another reason that requires us to affirm the trial court.

Assuming arguendo that the Volkswagen was lawfully impounded and the police officer had a right to make an inventory search of the vehicle, we are still compelled to affirm based on *State v. Boster,* 217 Kan. 618. The State argues that *Boster* was decided by the Kansas Supreme Court prior to *South Dakota v. Opperman,* 428 U.S. 364, and that if the Kansas Supreme Court

would have had the benefit of *Opperman* when *Boster* was decided, the test adopted would have been different.

In *Opperman,* the defendant's vehicle was unoccupied and illegally parked in a restricted zone. The car was towed to the city impound lot. From outside the car, a police officer saw a watch on the dashboard and other items of personal property in other areas. The car was then unlocked and, using a standard inventory form pursuant to standard police procedures, the officer inventoried the contents of the car, including the contents of the unlocked glove compartment where he found marijuana. Although at first blush it appears the Supreme Court adopted a per se rule that an inventory search pursuant to standard police procedures is reasonable, we note the Court appears to reaffirm its test of reasonableness based on the facts of each case by quoting with approval from *Coolidge v. New Hampshire,* 403 U.S. 443, 509-10, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971), as follows:

" '[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only *"unreasonable* searches and seizures." The relevant test *is not the reasonableness of the opportunity to procure a warrant,* but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts.' " 428 U.S. at 372-73.

It then appears to decide the case based on the facts contained in the record by concluding:

"The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. Cf. *United States v. Lawson,* 487 F.2d 468, 471 (CA8 1973). The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady,* there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

"On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth Amendment." 428 U.S. at 375-76.

Five basic exceptions to the requirement of a search warrant have developed over the years, to wit:
  1.  Voluntary consent;
  2.  Search incident to a lawful arrest;

3. Having probable cause to search *and* with exigent circumstances (includes plain view);
4. In hot pursuit;
5. Stop and frisk.

*Opperman* and *Boster* seem to fall within a rapidly developing sixth exception that applies only when all of the above recognized exceptions are inapplicable and the police conduct a good-faith inventory search of a lawfully impounded vehicle for noncriminal purposes and find criminal evidence falling in *plain view.* See also *Cooper v. California,* 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788 (1967), and *Cady v. Dombrowski,* 413 U.S. 433, 37 L.Ed.2d 706, 93 S.Ct. 2523 (1973). Plain view has not been interpreted by most courts to include only those items observable from the outside of the car—rather they include items that are in plain view during a reasonable search, and if it is reasonable to open the glove compartment to carry out the reasonable purpose of the search and contraband is in plain view, it will not be suppressible in many jurisdictions as the fruits of an unreasonable search.

If the cocaine seized in this case had been in plain view when the glove compartment was opened, the State's argument would be forceful under the facts of this case, even in light of *Boster.* We cannot presume, however, that the box had no lid or if it did that it was unlocked or unopen any more than we can presume in the absence of evidence that a suitcase in which an officer testified contraband had been found was unlocked and lying open or that the trunk of a car in which it is testified contraband had been found was unlocked and standing open. The State has a heavy burden of showing the search comes within an exception to the requirement of a search warrant, and in the absence of evidence to the contrary we cannot presume that the contraband was in plain view when the glove compartment door was opened and the box observed.

We do not deem *Boster* to be totally incompatible with *Opperman* for a number of reasons. It was first reaffirmed in *Boster* that the test is still "whether the search was reasonable in light of all the circumstances." (217 Kan. at 623.) It was also in *Boster* that the rule was adopted that "limit[s] a good faith inventory search of a lawfully impounded automobile to items within plain sight." (pp. 630-31.) The evidence that was suppressed in *Boster* was found in the locked truck of the car.

The facts here are similar to those in *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976), where a vehicle was seized which contained a closed knapsack in plain view. While the Court there found that *Opperman* allowed the rest of the vehicle to be searched, the fact that the knapsack was sealed made its contents of no concern to the police since the knapsack could have been listed as such and its contents were not in plain view. The same is true here where the drugs were inside a wooden box that we presume had to be opened to see inside, and the box itself was inside a closed glove compartment. We further note that in *Boster* our Supreme Court emphasized the privacy invasion aspect of an inventory search and made reference to Section 15 of the Bill of Rights of the Kansas Constitution, which is substantially the same as the Fourth Amendment to the United States Constitution; and although our Supreme Court does not specifically do so in *Boster,* it can construe the Kansas constitutional provision so as to provide greater protection to Kansas citizens than has been afforded to U.S. citizens by the United States Supreme Court's interpretation of a similar provision in the federal Constitution. *Oregon v. Hass,* 420 U.S. 714, 43 L.Ed.2d 570, 95 S.Ct. 1215 (1975). It is interesting to note that this is exactly what South Dakota did in *Opperman* upon remand. South Dakota interpreted its constitution's nearly identical provision to the federal Constitution to protect an individual from all inventory searches except those based on items in plain view. *State v. Opperman,* 89 S.D. 25, 228 N.W.2d 152 (1975).

The *Boster* decision was reaffirmed prior to the *Opperman* decision by the U.S. Supreme Court in *State v. Stewart,* 219 Kan. 523, 528, 548 P.2d 787 (1976), wherein an officer observed weapons from outside a vehicle during an inventory search of an impounded vehicle. It appears that the Kansas Supreme Court intended the inventory exception to warrant requirement announced in *Boster* to apply only to articles in plain view to the officer from outside the vehicle. It is not necessary for us to decide that question, however, for the State failed to prove the contraband was in plain view of the officer after he entered the car and opened the glove compartment. We do not believe *Opperman* to be so totally inconsistent with *Boster* that the Kansas Supreme Court would not have adopted the rule announced therein if the *Opperman* decision had been available when *Boster* was decided.

Affirmed.