No. 56,426

STATE OF KANSAS, *Appellant*, v. RICK E. FORTUNE, *Appellee*.

(689 P.2d 1196)

Opinion filed October 26, 1984.

*Geary N. Gorup*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with him on the brief for appellant.

*Michael T. Harris*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an interlocutory appeal, pursuant to K.S.A.

22-3603, by the State of Kansas from an order of the district court suppressing certain physical evidence in a criminal prosecution. The evidence suppressed was recovered by police officers from the locked trunk of defendant's automobile during an inventory search of the vehicle as a part of the procedure followed when a vehicle is impounded by police. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c). The facts are not in dispute.

On August 1, 1983, at 2:13 a.m., the defendant was stopped and arrested by a Wichita police officer in Wichita for driving while under the influence of intoxicating liquor. For the purposes of the suppression hearing the defense stipulated that the officer had probable cause to stop the defendant, and had probable cause for the subsequent arrest of the defendant. A passenger in the car, who was also under the influence of alcohol, was placed under arrest for charges unrelated to this appeal. The defendant was so intoxicated that after he was placed in the officer's patrol car he passed out. After the arrest the officer observed valuable personal property, including a video recorder and rolled coins, in plain view in the passenger compartment of the vehicle.

Pursuant to a policy of the Wichita Police Department the vehicle which the defendant was driving was impounded. The department policy provides that any time the driver of a vehicle is arrested and there is no one present to assume responsibility for the vehicle it will be impounded; all personal property is to be removed from the vehicle pursuant to an inventory search and turned in for safekeeping by the police department. In the present case the defendant's automobile was ordered impounded. Two police officers then searched the passenger compartment, the closed glove compartment and the locked trunk which was opened with car keys left on the roof of the vehicle by the defendant before he passed out.

All personal property except items customarily considered vehicle equipment was removed and kept for safekeeping. The vehicle itself was locked and released to a private company under contract with the city to tow and to store impounded vehicles until claimed by their owners. The keys to the vehicle were kept by the police for return to the defendant upon his release from jail. Among the items removed from the trunk was a slot machine which was subsequently determined to have been

stolen in a burglary. The defendant was charged in this action with that burglary as well as with the felonious theft of the slot machine. Defendant filed a timely motion pursuant to K.S.A. 22-3216 to suppress all physical evidence found in the trunk of the defendant's vehicle. The motion was sustained and the State has filed this interlocutory appeal from the court's ruling.

This is another in the endless series of cases facing the courts in their attempts to establish the extent of the prohibition against unreasonable searches and seizures mandated by the Fourth and Fourteenth Amendments to the United States Constitution and, in Kansas, Section Fifteen of the Bill of Rights of the Kansas Constitution. At the outset the State concedes that the instant search was conducted solely for inventory purposes incident to the lawful impounding of the defendant's vehicle. There is no contention that the search was conducted as an incident to the defendant's arrest, that exigent circumstances existed which justified the warrantless search, that the police officers had probable cause to believe any contraband was present in the vehicle or that evidence might be lost if the vehicle was not immediately searched. In addition, the defendant does not assert that the inventory search was a subterfuge by the police to conduct a warrantless search for which there was no probable cause or other grounds for a warrant. Both parties agree that it was nothing more or less than a good faith inventory search of a lawfully impounded vehicle. The district court, in suppressing the slot machine recovered from the trunk of defendant's vehicle, relied upon our decision in *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975), wherein the court held:

"In the absence of a search incident to a valid arrest, and in the absence of probable cause for a search, a good faith inventory search of a lawfully impounded automobile is limited to items in plain sight." Syl. ¶ 6.

The State urged before the trial court, and on this appeal, that *Boster* is no longer controlling in view of the decision in *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed.2d 1000, 96 S.Ct. 3092 (1976). At the outset it might be well to note that this court has taken the position that the scope of the constitutional protections afforded by the Kansas Constitution Bill of Rights, Section Fifteen and the Fourth Amendment to the United States Constitution is usually considered to be identical. *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983).

In *Boster* defendant was stopped in a car and arrested after failing to produce his driver's license on request, a traffic violation. Unable to post bond or pay his fine, he was booked and jailed. The police undertook a warrantless inventory search of his car, as was the customary procedure prior to impoundment. In the trunk they found a large container of coins, a portable television, a tape player, a turntable, two speakers and two amplifiers. The items were later determined to have been stolen from a local appliance store the day before defendant's arrest. As in the present case, defendant Boster was charged with burglary and theft. His appeal questioned the constitutional validity of the inventory search under the Fourth Amendment to the United States Constitution and Section Fifteen of the Bill of Rights of the Kansas Constitution. After determining that Boster had standing to object on constitutional grounds and that an inventory search constitutes a search as contemplated by both the federal and state constitutions, the court proceeded to consider the reasonableness of the inventory search. As stated by the court:

"An inventory search [of a lawfully impounded vehicle] constitutes a substantial invasion into the privacy of an individual and, regardless of the benevolent purposes [served by the inventory], such a search should be subject to the test of reasonableness created by the constitutional guarantees." 217 Kan. at 623.

The decision in *Boster* was twofold: first, the court held that the automobile driven by Boster was illegally impounded and therefore the inventory search was invalid; and second, the court held that even assuming the police had lawful custody of the vehicle, the search itself was unreasonable.

In the instant case the State first contends that the *Boster* decision, insofar as it determined the search was unreasonable, was dicta and should not be considered as precedent because the actual holding was limited to the propriety of the vehicle impoundment, rather than the search. We consider this argument totally frivolous. "Obiter dictum" is defined as "[w]ords of a prior opinion entirely unnecessary for the decision of the case. . . . Statements in opinions wherein courts indulged in generalities that had no actual bearing on issues involved." Black's Law Dictionary 1222 (4th ed. rev. 1968). "Dictum" is a statement which lacks the force of an adjudication. Black's Law Dictionary 541 (4th ed. rev. 1968). The inventory search portion

of the opinion in *Boster* was an alternative ground for our decision in the case and the fact that such alternative holding possessed the full force of an adjudication is not only obvious but has been so recognized in prior cases. See *State v. Potter*, 8 Kan. App. 2d 52, 648 P.2d 1162 (1982); *State v. Morgan*, 3 Kan. App. 2d 667, 600 P.2d 155 (1979); *State v. Stewart*, 219 Kan. 523, 548 P.2d 787 (1976).

In *Boster* the State, in attempting to meet its burden of proving the search was reasonable, argued it was both necessary and reasonable for the police to conduct an inventory search of the entire vehicle, including the trunk and other enclosed areas, so they might fully protect the defendant's property and insulate themselves from possible liability on later claims of loss or damage. The court pointed out that the scope of a reasonable inventory search depends on the competing interests of the vehicle owner or driver in maintaining the privacy of his personal effects as opposed to the protection of both the valuables and the impounding authorities.

Defendant Boster claimed the police inventory search should be limited to items in "plain view," that is, what could be seen in the passenger compartment of the car. Under this approach the search of the trunk of his vehicle was unreasonable he argued. Relying on the seminal case of *Mozzetti v. Superior Court*, 4 Cal. 3d 699, 94 Cal. Rptr. 412, 484 P.2d 84 (1971), this court agreed, stating:

"The California court rejected the argument of the state that an inventory search into closed areas was reasonably necessary to protect the defendant's personal property from loss or to protect the police from unfounded tort claims. It is sufficient, said the court, if the windows are rolled up, doors locked, and keys returned to the owner. If an inventory search is to be made, its scope must be limited to property in plain sight. The rule was expressed in the following language:

'We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in *plain sight* within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report. . . .' (p. 707.) [Emphasis added.]

"We agree generally with the approach taken by the court in *Mozzetti* and consider it to represent the better reasoned position with regard to the validity of inventory searches. Valuables locked in the trunk of an automobile, as was the situation in the instant case, present no great danger of theft. We feel that any need to protect such items is outweighed by the countervailing interest of the individual in the privacy of the enclosed areas of his car." *Boster*, 217 Kan. at 628.

We concluded *Boster* acknowledging a definite split of authority in other jurisdictions regarding the validity and scope of inventory searches. Nevertheless we reversed the trial court's admission of the evidence seized from the trunk of the car defendant was driving, stating that "[i]n the absence of a search incident to a valid arrest, and in the absence of probable cause for a search, we believe the better rule should limit a good faith inventory search of a lawfully impounded automobile to items within plain sight." *Boster,* 217 Kan. at 630-631. The "plain view" limitation set forth in *Boster* was subsequently relied upon in *State v. Potter,* 8 Kan. App. 2d 52; *State v. Morgan,* 3 Kan. App. 2d 667; and *State v. Stewart,* 219 Kan. 523.

One year after our decision in *Boster,* the United States Supreme Court handed down *South Dakota v. Opperman,* 428 U.S. 364. There the police impounded defendant's vehicle for multiple parking violations. A police officer, looking through the windows of the vehicle, observed a watch and other personal property in the passenger compartment. The officer ordered the door unlocked and, using a standard inventory form pursuant to standard police procedure, inventoried the contents of the car including the unlocked glove compartment. Inside the glove compartment he found a plastic bag containing marijuana. Defendant was later charged with, and convicted of, possession of marijuana. On appeal the South Dakota Supreme Court reversed Opperman's conviction, applying a plain view rule to inventory searches in an opinion using a strikingly similar approach to that we used in *Boster. State v. Opperman,* 89 S.D. 25, 228 N.W.2d 152 (1975). The South Dakota Supreme Court said:

"Cognizant that mere custody of a vehicle is not sufficient to cause a divestiture of Fourth Amendment protections we hold that 'minimal interference' with a citizen's constitutional rights means that police inventory searches must be restricted to safeguarding those articles which are within plain view of the officer's vision.

. . . .

"Applying this standard to the instant case would mean that the officer had a right to enter the vehicle to remove those objects in plain view, such as the watch on the dashboard, to a place of safety. He had no right to conduct an exploratory search of either the console [glove compartment], the trunk or a closed suitcase." 89 S.D. at 36-37.

Because "naked custody of the vehicle" was the only justifying circumstance offered by the State in support of its warrantless

search of the closed glove compartment, the court concluded the search was unreasonable.

On certiorari the United States Supreme Court reversed and remanded that judgment. Writing for the majority, Chief Justice Burger began his analysis by pointing out that automobiles have traditionally been given different treatment under the Fourth Amendment because of their inherent mobility and the owner's/operator's lesser expectation of privacy. Interests of public safety and the efficient movement of vehicular traffic require that the police frequently remove and impound automobiles, after which the routine practice of securing and inventorying an automobile's contents serves three distinct needs: protection of owner's property while it remains in police custody; protection of the police against claims or disputes over lost or stolen property; and protection of police from potential danger. The majority noted that the state courts have overwhelmingly concluded that even if an inventory is characterized as a "search," the intrusion is constitutionally permissible. Citing *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971), Chief Justice Burger stated the relevant test under the Fourth Amendment is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. Relying on its prior decisions in *Cady v. Dombrowski,* 413 U.S. 433, 37 L.Ed.2d 706, 93 S.Ct. 2523 (1973), *Harris v. United States,* 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968), and *Cooper v. California,* 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788 (1967), the majority concluded it had "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." 428 U.S. at 373.

On the facts of *Opperman* the Court held that the inventory search was not unreasonable under the Fourth Amendment because the police were engaged in a caretaking search of a lawfully impounded vehicle, the owner was not present to make other arrangements for the safekeeping of his belongings, the inventory was prompted by the presence in plain view of a number of valuables inside the car, and there was no suggestion that the procedure was a pretext concealing an investigatory police motive. Regarding the reach of the inventory search into

the unlocked glove compartment, the majority said standard inventories often include an examination of the glove compartment since it is a customary place for documents of ownership and registration, as well as a place for the temporary storage of valuables.

"The inventory was not unreasonable in scope. Respondent's motion to suppress in state court challenged the inventory only as to items inside the car not in plain view. But once the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car." 428 U.S. at 376, n. 10.

In a dissent, Justice Marshall specifically pointed out the limits of the majority holding in that the Court did *not* consider "whether the police might open and search the glove compartment if it is locked, *or whether the police might search a locked trunk or other compartment.*" 428 U.S. at 385, n. 1. Thus it is clear that *Opperman* could be distinguished from the case now before us and that it may be said that *Opperman* does not require us to overrule or expand *Boster* to authorize the search of the locked trunk. However, we deem the rationale of *Opperman* persuasive in certain limited circumstances such as are present in the instant case. Is it reasonable or in the best interests of the public to restrict an inventory search of a *lawfully impounded* vehicle to items which only appear in plain view of the officers? We think not. The vast majority of federal and state courts have applied *South Dakota v. Opperman* to permit inventory searches under various factual situations more or less similar to the one at issue here. Inventory searches of vehicles lawfully impounded following the arrest of a driver or occupant for vehicle or traffic violations have been upheld in the following cases: *United States v. Dall*, 608 F.2d 910 (1st Cir. 1979), *cert. denied* 445 U.S. 918 (1980); *United States v. Smith*, 621 F.2d 483 (2d Cir. 1980), *cert. denied* 449 U.S. 1086 (1981); *United States v. Prescott*, 599 F.2d 103 (5th Cir. 1979); *United States v. Scott*, 665 F.2d 874 (9th Cir. 1981); *United States v. Martin*, 566 F.2d 1143 (10th Cir. 1977); *Schwasta v. United States*, 392 A.2d 1071 (D.C. 1978); *Martasin v. State*, 155 Ga. App. 396, 271 S.E.2d 2 (1980); *People v. Clark*, 65 Ill. 2d 169, 2 Ill. Dec. 578, 357 N.E.2d 798 (1976), *cert. denied* 431 U.S. 918 (1977); *Griffin v. State*, 175 Ind. App. 469, 372 N.E.2d 497 (1978); *State v. Roth*, 305 N.W.2d 501 (Iowa), *cert. denied* 454 U.S. 870 (1981); *People v. Boutell*, 80

Mich. App. 216, 263 N.W.2d 36 (1977), *appeal denied* 402 Mich. 877 (1978); *State v. Gibeson,* 614 S.W.2d 14 (Mo. App. 1981); *State v. Roberson,* 156 N.J. Super. 551, 384 A.2d 195, *cert. denied* 77 N.J. 487 (1978); *Crowder v. State,* 590 P.2d 683 (Okla. Crim. 1979); *State v. Weeks,* 29 Or. App. 351, 563 P.2d 760 (1977); and *Evers v. State,* 576 S.W.2d 46 (Tex. Crim. 1978). For a complete discussion of the various cases, pro and con, relating to vehicle inventory searches, see Annot., Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police, 48 A.L.R.3d 537.

While it would not serve any useful purpose to attempt to review the numerous cases that have considered the *Opperman* holding in various factual situations, the obvious trend is away from the plain view limitation of *Boster.* The most recent case our research has disclosed is *People v. Gonzalez,* 62 N.Y.2d 386, 477 N.Y.S.2d 103, 465 N.E.2d 823 (1984), wherein the New York Court of Appeals upheld a warrantless inventory search of a closed container in the passenger compartment of an impounded vehicle. In doing so, the court relied in part upon *Opperman* and stated:

"It is settled law that the police may search an impounded vehicle to inventory its contents (*South Dakota v. Opperman,* 428 U.S. 364 [, 49 L.Ed.2d 1000, 96 S.Ct. 3092]). Such searches, conducted as routine procedures, are permitted to protect an owner's property while it remains in police custody, to protect the police against false claims for missing property and to protect the police from potential danger [Citations omitted]. In *Opperman* and subsequent decisions, the Supreme Court has distinguished the 'probable cause' standard applied to investigative searches from the standard of 'reasonableness' applied to routine administrative acts such as noninvestigative police inventories of vehicles lawfully in governmental custody and held that once a court determines that the purpose of a search by the police was to inventory the effects of a person under lawful arrest, rather than to discover evidence of a crime, the 'salutary functions of a warrant' no longer apply [Citations omitted]. Constitutionality is established upon proof that the search was reasonable." 62 N.Y.2d at 388-89.

For cases specifically involving the search of an automobile trunk see 48 A.L.R.3d 537, 577-80.

It is difficult to see a valid distinction between the police action in opening the locked vehicle in *Opperman,* when presumably they did not even have access to the keys, and the opening of the locked trunk in the instant case with the defendant's keys which were made readily accessible to the police by the defendant's own actions. In either case, the intrusion into the

privacy interests of the respective defendants was minimal. In today's metropolitan areas the excessive number of motor vehicles makes traffic control and the appropriate disposition of impounded vehicles a major governmental and law enforcement problem. The towing and storage of lawfully impounded vehicles is a major business conducted in areas such as Wichita by private enterprise and not by the police or other government employees. Once the vehicle is turned over by the police to the towing and storage operators, neither the owner of the vehicle nor the police have any further control of it until it is properly released by the storage operator. It appears to us that an inventory search of the vehicle, including customary storage areas such as the glove box and trunk, is clearly justified not only for the protection of the vehicle and its contents but for all interested parties.

We think the more compelling determination in any particular factual situation involving an inventory search of a vehicle is whether the vehicle is lawfully in police custody. If the owner, operator or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable (as in the instant case) or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reason justifying impoundment exists should the officers assume control over the vehicle. However, in such cases we deem it reasonable within the restraints of the Fourth and Fourteenth Amendments to the United States Constitution and Section Fifteen of the Bill of Rights of the Kansas Constitution for the impounding officers to make a warrantless inventory search of the personal property within the vehicle, including the glove box and trunk, when the same may be accomplished without damage to the vehicle or its contents. The governmental interests involved in protecting the personal property in the vehicle, in protecting the police from subsequent claims for loss or damage, and the protection of the police and public from

possible danger or damage outweigh the privacy interests of the owner or other person responsible for the impounded vehicle. To the limited extent that the foregoing expands the plain view limitation of *Boster* and its progeny, those cases are overruled.

The judgment is reversed and the case is remanded for further proceedings.