IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,915

STATE OF KANSAS,
*Appellee*,

v.

CASEY M. BAKER,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a person is arrested in a public place, the arresting officer may take custody of personal effects that are with the arrestee at the time if it is reasonable under the totality of the circumstances.

2.

Standardized criteria or an established routine must regulate the opening of containers during a valid inventory search.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 21, 2015. Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed June 9, 2017. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kate Duncan Butler,* assistant district attorney, argued the cause, and *Patrick J. Hurley,* assistant district attorney, *Charles E. Branson,* district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

1

The opinion of the court was delivered by

STEGALL, J.: Casey M. Baker appeals the denial of his motion to suppress evidence discovered through a warrantless search of his backpack at the time of arrest as well as his resulting convictions for possession of methamphetamine and possession of drug paraphernalia. The district court denied the motion, ruling the evidence would have been inevitably discovered during an inventory search. The Court of Appeals affirmed.

We conclude the officers reasonably seized Baker's backpack but the State presented no evidence of an established inventory routine that would have inevitably led to the opening of the containers in which the evidence was found. Therefore, we hold the State did not prove by a preponderance of the evidence that the contraband would have been inevitably discovered and the district court erred in denying Baker's motion to suppress. Accordingly, we reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not in dispute. In July 2013, Detective Mike McAtee and Officer Kim Nicholson, with the Lawrence Police Department, were traveling to court in an unmarked police vehicle when they noticed Baker riding his bicycle and wearing a blue drawstring backpack. Detective McAtee called for assistance because he knew Baker had outstanding arrest warrants and was a suspect in other cases. Detective McAtee and Officer Nicholson spotted Baker's bicycle outside the Habitat for Humanity store in the 700 block of Connecticut Street in Lawrence. They found Baker inside the store holding the same backpack.

When the officers approached, Baker dropped the backpack. They arrested Baker on his outstanding warrants, and Detective McAtee instructed Officer Ryan Halsted to search the backpack. Officer Halsted searched the backpack at the scene and discovered

2

needles inside a Nintendo game case. He searched the backpack again in an evidence room and found a bag of crystal-like substance inside a cell phone carrier. The substance tested positive for methamphetamine.

Baker moved to suppress this evidence, arguing the warrantless search of his backpack violated the Fourth Amendment. Specifically, Baker claimed his backpack was searched without probable cause and the contraband would not have been inevitably discovered through an inventory search. He also argued law enforcement would not have had lawful custody of the backpack at the time of an inventory search. The State countered that the evidence would have been inevitably discovered through an inventory search at the arresting agency or jail and it was reasonable to seize the backpack instead of leaving it unattended in the store.

At the suppression hearing, Detective McAtee testified the backpack was searched for evidence of crimes under investigation and collected for safekeeping as Baker's personal property. He explained the police have an obligation to collect personal property instead of leaving it unattended at the scene following an arrest.

Two officers testified about inventory searches. The State asked Officer Halsted, "When you make an arrest of an individual on the street and you take that individual to the county jail, what do you do with that individual's belongings that are in that person's possession?" Officer Halsted testified:

> "[Officer Halsted:] If there's a lot of items or a large bag or something like that, what we will do is put it into personal property [at the Lawrence Police Department]. Once it goes into personal property, then we have to inventory that so we know what's in our evidence room A and B, so we can protect the individuals and ourselves.

> "[The State:] So if I understand your response correctly, there are two ways that personal property of somebody going into the jail can be handled.

"[Officer Halsted:] Correct. For instance, if I can give you an example, say, for instance, I arrest somebody and they have, you know, two or three suitcases full of stuff or a large amount of items for stuff, the jail will not accept that and we have to put that into the personal property up in the evidence room here."

During cross-examination, Halsted testified the bag would have gone with Baker to jail and "been searched to inventory."

Corrections Officer Phillip Weinmaster was working as a booking officer on the day Baker was arrested. He testified that when someone is booked into jail, officers take custody of "any items like cell phone, wallet, watch, money, loose change, pens, anything like that," but "[i]f it's a bag or anything bigger than that," they release the property to the arresting agency. The State asked Officer Weinmaster what would happen to a "purse or small bag." Officer Weinmaster explained:

"[Officer Weinmaster:] A small bag or a purse we usually accept. It just depends on the size. We just don't have the room out at the facility to house all the extra items.

"[The State:] And is it a situation where it just depends on the judgment of the booking officer as to whether or not something is too big or not?

"[Officer Weinmaster:] Yes. I mean we have guidelines like anything like a backpack or a duffle bag, anything like that will be given back to the arresting agency.

"[The State:] Now, if a smaller bag is deemed to be okay to be accepted by the jail, what is done with the bag?

"[Officer Weinmaster:] It is opened up, searched out in the vehicle sally port, and if anything is found in that that's deemed contraband, that item is given back to the arresting agency. Then whatever is allowed to come in, we take that in and put it into our property room."

4

The district court denied Baker's motion to suppress, finding (1) officers did not have probable cause to conduct a warrantless search of the backpack; but (2) the evidence was nonetheless admissible because it would have been inevitably discovered through a valid inventory search. The court reasoned:

> "As far as the State's basis that the bag was searched for evidence of crimes that were currently under investigation, which Officer McAtee testified about at the [suppression] hearing but he did not certainly at the preliminary hearing. At the preliminary hearing there was no mention as that being a basis for the search of the bag nor was there any mention that other crimes were being investigated. That wasn't even included in the State's brief. Then at the hearing Mr. McAtee testified as to other and new reasons that he thought he had the right to search the bag, and that was that he had probable cause to search for evidence of crimes under investigation. And the Court finds that there was insufficient evidence to show that that was the reason for the search or that they thought that there would be evidence of other crimes in that bag.

> "Which then takes us to what the State argued in its brief, and that was the inevitable discovery doctrine . . . . And that's really the real issue here and the one I wanted to think about.

> . . . .

> "So here the defendant is in a retail store. He's not at a home or a place where he had some control over the premises or relationship with individuals there. . . . He was alone in a retail store. He really didn't have any reasonable options of what else he was going to do with that bag.

> "And so the Court finds that it wasn't necessary to ask, 'What do you want to do with your bag,' because he didn't have any options. Again, it may be different had he not been in a retail space where he had no connection or control over the space, but because of that, the Court finds that it was inevitable. That bag was going to go with him to the jail and would either have been searched there or at the training center, depending on the size of the bag, to do an inventory search."

5

Following a bench trial, Baker was convicted of possession of methamphetamine and possession of drug paraphernalia. At the beginning of the trial, Baker moved for reconsideration of his motion to suppress, preserving it for review. See *State v. Spagnola*, 295 Kan. 1098, Syl. ¶ 1, 289 P.3d 68 (2012) ("When the same judge considers a motion to suppress and then conducts a bench trial, and the defendant objects before the introduction of physical evidence that was the subject of the motion to suppress, the issue of whether the introduction of that evidence was proper is sufficiently preserved to allow appellate review.").

Baker appealed his convictions and the denial of his motion to suppress. The district court's first finding—that there was no probable cause to search the backpack—is not in dispute. The sole issue on appeal is whether the contraband would have been inevitably discovered through a valid inventory search. In other words, the State concedes that an unconstitutional search occurred but argues the inevitable discovery doctrine—as an exception to the exclusionary rule—preserves the admissibility of the evidence.

The Court of Appeals affirmed, holding, "The officers arrested Baker in a public place and, thus, it was reasonable for the officers to seize Baker's backpack for safekeeping," and "the Lawrence Police Department would have inevitably discovered the evidence through lawful means because law enforcement may, without a warrant, search any article in the possession of an arrested person in accordance with routine inventory procedures." *State v. Baker*, No. 111,915, 2015 WL 5036761, at *5-6 (Kan. App. 2015) (unpublished opinion).

ANALYSIS

The State claims the evidence was lawfully seized and would have been inevitably discovered as part of a valid inventory search because it was the jail's policy and practice to search arrestees' bags. Indeed, the State presented testimony to this effect. However,

Baker contends a policy of merely searching bags is insufficient to prove that an inventory search would have inevitably included a search of the containers in which the evidence was found. We agree.

When reviewing a motion to suppress evidence,

"'an appellate court determines whether the factual underpinnings of the district judge's decision are supported by substantial competent evidence. The ultimate legal conclusion to be drawn from those facts raises a question of law requiring application of a de novo standard. An appellate court does not weigh evidence to find facts.'" *State v. Sprague*, 303 Kan. 418, 434, 362 P.3d 828 (2015) (quoting *State v. Ransom*, 289 Kan. 373, Syl. ¶ 1, 212 P.3d 203 [2009]).

Because the material facts are undisputed, only a question of law remains over which we exercise plenary review. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012).

"The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures, and a warrantless search is per se unreasonable unless it falls within a recognized exception." *State v. Ramirez*, 278 Kan. 402, 404-05, 100 P.3d 94 (2004); see *State v. Ryce*, 303 Kan. 899, 913, 368 P.3d 342 (2016). One "well-defined" exception to the warrant requirement is the inventory search, which "is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." *Illinois v. Lafayette*, 462 U.S. 640, 643-44, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983). In short, "[a]n inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items . . . and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 812 n.1, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 [1976]).

The justification for an inventory search "does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search." *Lafayette*, 462 U.S. at 643. Instead, "[t]o determine whether the search . . . was unreasonable we must 'balanc[e] its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" 462 U.S. at 644 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L. Ed. 2d 660 [1979]). As in *Lafayette*, "standardized inventory procedures are appropriate to serve legitimate governmental interests at stake here," such as safeguarding the owner's property and protecting police against possible false claims of theft. *Lafayette*, 462 U.S. at 647; see *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987) ("[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.").

The exclusionary rule is a judicially created remedy that prohibits the introduction of evidence obtained in violation of the Fourth Amendment in order to deter future violations. See *Davis v. United States*, 564 U.S. 229, 236-38, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011); *State v. Powell*, 299 Kan. 690, 694-95, 325 P.3d 1162 (2014). One exception to the exclusionary rule is the inevitable discovery doctrine, which "allows for the admission of evidence that would have been discovered even without the unconstitutional source," *Utah v. Strieff*, 579 U.S. __, 136 S. Ct. 2056, 2059, 195 L. Ed. 2d 400 (2016), because "punishment for an act that does no harm is not required in order to deter harmful acts," *State v. Ackward*, 281 Kan. 2, 18, 128 P.3d 382 (2006). See *United States v. Johnson*, 380 F.3d 1013, 1014 (7th Cir. 2004) ("The 'inevitable discovery' doctrine allows the government to use evidence that it obtained illegally but would have obtained legally in any event."). The State must prove by a preponderance of the evidence that "the unlawfully obtained evidence would have ultimately or inevitably been discovered by lawful means"—in this case, through an inventory search. *State v. Walker*, 283 Kan. 587, Syl. ¶ 8, 153 P.3d 1257 (2007).

8

As a preliminary matter, inventory searches are only valid if law enforcement has lawful custody of the property that is inventoried. See *State v. Teeter*, 249 Kan. 548, 550, 819 P.2d 651 (1991) ("It is a well-known rule of law that an inventory search of a vehicle cannot be valid unless the police first obtain lawful possession of the vehicle."). Baker contends the backpack would not have been in lawful custody of the police at the time of any inventory search because the officers did not ask Baker what he wanted to do with his backpack.

Analogizing his backpack to a vehicle, Baker asks us to extend *State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984), to the facts of this case. In *Fortune*, we stated:

"If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable (as in the instant case) or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reason justifying impoundment exists should the officers assume control over the vehicle." 236 Kan. at 257.

However, we clarified *Fortune*'s holding in *State v. Shelton*, 278 Kan. 287, 293, 93 P.3d 1200 (2004), stating, "The Fourth Amendment does not require police to allow an arrested person to arrange for the disposal or removal of his or her vehicle to avoid impoundment." Instead, the Fourth Amendment requires "that the impoundment be reasonable under the totality of circumstances." 278 Kan. at 293.

Likewise, officers could lawfully take custody of Baker's backpack if it was reasonable under the totality of the circumstances. "When a person is arrested in a place other than his home, the arresting officers may 'impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the

9

area.'" *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) (quoting *Cabbler v. Superintendent, Virginia State Penitentiary*, 528 F.2d 1142, 1146 [4th Cir. 1975], *cert. denied* 429 U.S. 817, 97 S. Ct. 60, 50 L. Ed. 2d 77 [1976]). When Baker was arrested, he was alone in a retail store. As the Court of Appeals astutely observed, "It would be unreasonable to simply leave Baker's backpack unattended at the scene of his arrest or expect someone at the store to take possession of the backpack not knowing what might be in it." *Baker*, 2015 WL 5036761, at *6.

We concur and conclude the seizure of Baker's backpack was reasonable under the totality of the circumstances. See *State v. Demontiney*, 374 Mont. 211, 217, 324 P.3d 344 (2014) (defendant's purse, which was on the floor next to her when she was arrested at Wal-Mart, was in her immediate possession, such that it was subject to a valid inventory search to safeguard persons and property); LaFave, 3 Search & Seizure § 5.5(b) (5th ed. 2016) ("[W]hen a person is arrested in some public place while carrying a suitcase or like object . . . it would be clearly improper for the police to simply leave the container unattended at the scene of the arrest.").

We now turn to the question at the heart of this case: whether the State proved by a preponderance of the evidence that a standardized inventory policy or routine, when followed, would have inevitably led to the opening of the containers—a Nintendo game case and a cell phone carrier—housing the contraband. Simply put, Officers Halsted and Weinmaster testified that a small bag or backpack would have been "searched" or "inventoried" at the arresting agency or jail—and nothing more. The failure to present any evidence of standardized criteria or an established routine governing the opening of closed containers during inventory searches is fatal to the State's inevitable discovery claim.

"[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in

accordance with established inventory procedures." *Lafayette*, 462 U.S. at 648. However, the United States Supreme Court has cautioned:

> "Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990) (quoting *Bertine*, 479 U.S. at 376 [Blackmun, J., concurring]).

See *Shelton*, 278 Kan. at 299.

In *Wells*, law enforcement had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." 495 U.S. at 4-5. The Supreme Court held that "absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment." 495 U.S. at 4-5.

The *Wells* rule applies here—standardized criteria or an established routine must regulate the opening of containers found during inventory searches. Opening all containers, no containers, or opening only those containers "whose contents officers determine they are unable to ascertain from examining the containers' exteriors" are all constitutionally permissible practices so long as they are standardized and well established. *Wells*, 495 U.S. at 4. A written policy undoubtedly has the advantage of providing certainty as to the established practices, but it is not required. *People v. Williams*, 20 Cal. 4th 119, 83 Cal. Rptr. 275, 126-27, 973 P.2d 52 (1999) ("*Wells* does not require a *written* policy governing closed containers . . . but the record must at least indicate that police were following some 'standardized criteria' or 'established routine' when they elected to open the containers."); *State v. Wilson*, 116 N.M. 793, 797, 867 P.2d

11

1175 (1994) ("Inventory search procedures must be standardized, but need not be written.").

However, producing *no* evidence of a policy with respect to the opening of containers—as occurred here—does not pass constitutional muster. *Wells*, 495 U.S. at 4-5; see *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002) (law enforcement may open closed containers during an inventory search as long as they act in good faith pursuant to established procedures); *United States v. Richardson*, 121 F.3d 1051, 1055 (7th Cir. 1997) (searching closed containers as part of an inventory search is permissible so long as standardized criteria or established routines exist regarding the opening of closed containers); *United States v. Evans*, 937 F.2d 1534, 1538-39 (10th Cir. 1991) (search of defendant's carry-on bag was a valid inventory search in accordance with department policy directing officer to open locked containers before booking). We find nothing in the record before us to establish that the search which occurred here was anything other than general rummaging.

Consequently, we hold the State did not prove by a preponderance of the evidence that the contraband would have been inevitably discovered through a valid inventory search of Baker's backpack. Therefore, the district court erred in denying Baker's motion to suppress, and we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.