No. 89,610

STATE OF KANSAS, *Appellee*, v. CHARLES R. SHELTON, *Appellant*.
(93 P.3d 1200)

Opinion filed July 23, 2004.

*Korey A. Kaul,* assistant appellate defender, argued the cause, and *Peter Maharry,* assistant appellate defender, was with him on the brief for appellant.

*Bobby J. Hiebert, Jr.,* assistant county attorney, argued the cause, and *Ellen Mitchell,* county attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Charles R. Shelton, was charged with several drug offenses based upon evidence seized in an inventory search of the van he was operating. We granted his petition for review on the question of whether the district court erred in not suppressing evidence resulting from the inventory search. More specifically, we consider whether the impoundment of the van was lawful where officers did not ask the defendant as to disposition of the van and whether the search was pretextual based upon officers' failure to include all valuables in the inventory. We affirm.

Facts

On March 12, 2002, the Saline County Sheriff's office received a report that a van, surrounded by coolers, was sitting in the road in a rural area near Simpson and Assaria Roads. Several people ran away from the area when the reporting caller drove by. Deputies James Fletcher and Glenn Gathers were dispatched to the scene around 6:13 a.m.

As the officers approached the intersection, Deputy Fletcher observed a van parked in the middle to right-hand side of the road near a stop sign. He could see the van from about a half mile away. Fletcher found the defendant asleep in the driver's seat, and he knocked on the window to wake him. He asked for a driver's license and the defendant gave him a Kansas identification card. After running his name through the dispatch center, Fletcher arrested the defendant for operating a vehicle while his license was revoked.

The defendant told Fletcher that he was from Carlton, Kansas. Fletcher did not recall asking the defendant if there was anyone in the area that could move the van for him, and the defendant testified that he was not consulted. When asked if the defendant was of right mind and capable of making a decision regarding the disposition of the van, Fletcher replied, "Possibly." As department policy dictated that the vehicle be impounded if an individual was arrested and someone was not immediately available to retrieve the vehicle, the officers contacted a towing company to take the van out of the intersection.

The officers began an inventory search of the van. Fletcher got into the van and wrote down the odometer reading, the make of the van, and the license tag number. He noticed a drinking cup with a syringe in it between the driver and passenger seats. He asked the defendant if he was a diabetic and the defendant responded in the negative. Fletcher gave the inventory sheet to Deputy Gathers who listed the personal property in the van as a CD case, miscellaneous pictures, a Kansas tag, miscellaneous clothing, and videotapes.

Fletcher testified that he understood department policy was to list all items of value in an inventory search so that if something later turns up missing the officers can refer to the impound sheet. Fletcher admitted that there were items in the van that were not listed, including the items seized as evidence. Evidence taken from the van included the syringe, a duffel bag, an address book, and an "owe sheet" in the bag. At the preliminary hearing, Fletcher testified that he found two backpacks in the passenger area which contained baggies of marijuana, methamphetamine, and electronic scales.

Aaron Dennett, the van's owner, picked up the van from the impoundment location the next day. The defendant examined the van at Dennett's home 3 days after his arrest and took pictures of the inside of the van which were admitted at the suppression hearing. The defendant explained that he took the pictures because he did not get a copy of the impound inventory. The pictures showed a CD case and CDs, glasses, a CD player installed in the van, two 1888 and 1898 silver dollars, tools and toolboxes, an old tape deck,

an electrical connector box, a first-aid kit, a jack, a laundry basket with sheets, a bag of dog food, and other things "that probably should never have been in the van."

The defendant was charged with possession of methamphetamine with intent to sell, possession of marijuana with intent to sell, possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and driving while his license was revoked. He moved to suppress all evidence found in the van, arguing that his van was unlawfully impounded and that the subsequent inventory search was a subterfuge by law enforcement officers to conduct a warrantless search.

The district court denied the motion after a suppression hearing. The court first found that probable cause existed to arrest the defendant for driving while his license was revoked. Second, the court found the impoundment was legal, reasoning that no one was at the scene to take charge of the van, the defendant was not capable of driving the van, no evidence was presented that the deputy could have legally parked it alongside a country road, officers do not have to summon someone from outside the immediate vicinity and the location of the van was a "pretty long ways" from the town where the defendant claimed he resided, and no obligation existed to leave an officer with the van until its owner could be contacted.

Finally, the court found that the officer was required to conduct an impoundment search, regardless of whether it turned out to be a full and complete search. It reasoned that Fletcher began the search as a lawful inventory search and had no reason to suspect anything until he saw the syringe in the cup in plain view. The court concluded that this case does not run afoul of either *State v. Teeter,* 249 Kan. 548, 819 P.2d 651 (1991), or *State v. Anderson,* 259 Kan. 16, 910 P.2d 180 (1996), as a search incident to arrest.

The defendant was tried on stipulated facts, reserving his right to appeal the court's ruling on the motion to suppress, and he was convicted of felony possession of methamphetamine with intent to sell, felony possession of marijuana with intent to sell, felony possession of drug paraphernalia, and driving while license revoked.

The defendant appealed the court's ruling on the motion to suppress to the Court of Appeals, arguing the inventory search was

illegal because it was a cover for an investigatory search by the officers and because the officers failed to give the defendant the option of having someone else retrieve the van before immediately having it towed and impounded.

In affirming the district court, the Court of Appeals found the impoundment was legal. The court distinguished this case from the unlawful impoundment in *Teeter* where the defendant was parked in a private area, the defendant was not arrested prior to the impoundment, and the defendant was instructed to drive the vehicle to the impoundment area. The court found that *Teeter* more generally applied the guidance of *State v. Fortune,* 236 Kan. 248, 689 P.2d 1196 (1984), and *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975), and did not merely decide the case based on lack of consultation. *State v. Shelton,* No. 89,610, unpublished opinion filed Nov. 26, 2003.

The court concluded that the facts of this case were most similar to *State v. Bornholdt,* 261 Kan. 644, 657-58, 932 P.2d 964 (1997), where the court endorsed the *Fortune* and *Boster* criteria by upholding an impoundment where the defendant was arrested and left his vehicle unattended, the vehicle was stopped in a lane of traffic, and the record did not indicate whether the defendant attempted to make any disposition of the vehicle. The Court of Appeals reasoned that the defendant testified that he was unaware of anyone being around, the defendant was lawfully arrested, the defendant's van was parked in the middle of a rural roadway, and the record did not indicate that the defendant objected to the impoundment or suggested any practical alternatives, nor did he on appeal, and so the impoundment was legal.

The Court of Appeals also rejected the defendant's argument that the inventory search was a ruse for an investigatory search, noting that the inventory search was conducted pursuant to department policy and that the only evidence that the search was a ruse was that some items in the van, arguably of value, were not listed on the inventory sheet. As Fletcher testified that he had done previous inventory searches and his practice was to list only those items of value, the court declined "to invalidate the search based solely on Fletcher's discretionary determination of what was a val-

uable item according to the standards of the department," citing
*Florida v. Wells*, 495 U.S. 1, 4, 109 L. Ed. 2d 1, 110 S. Ct. 1632
(1990). The court concluded that Fletcher's listing of items from
the search, coupled with his testimony which the district court
found credible, was substantial competent evidence that Fletcher
engaged in a reasonable inventory search.

Inventory Search

The defendant contends that all evidence obtained by the police
from the inventory search of the vehicle he was operating should
have been suppressed for two reasons: (1) He was not asked by
the police as to the disposition of the vehicle and (2) the search
was a cover for an investigatory search by the officers. The first
contention deals with the impoundment of the vehicle and the
second questions the search itself.

Our standard of review on both questions is the same primarily
because both questions involve factual determinations by the trial
court as well as a legal determination based on those findings of
fact and, thus, the resolution of both contentions is a mixed ques-
tion of fact and law:

> "On a motion to suppress evidence, this court reviews the facts underlying the
> trial court's suppression decision by a substantial competent evidence standard
> and the ultimate legal conclusion drawn from those facts by a de novo standard.
> In this case there is no dispute as to the facts; therefore, the ultimate determi-
> nation of suppression is a legal question requiring this court's independent con-
> stitutional appraisal of the effects of those facts." *State v. Morris*, 276 Kan. 11,
> 15, 72 P.3d 570 (2003).

"When a motion to suppress evidence is filed, the State bears
the burden of proving to the trial court the lawfulness of the search
and seizure." *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

(1) Suppression of Evidence

The prosecution's case depended upon the admission of evi-
dence seized during the search of the van the defendant was op-
erating. Before any consideration of the search itself, the impound-
ment of the van by the police must meet the requirements of the
Fourth Amendment to the United States Constitution. Inventory
searches are recognized as exceptions to the probable cause war-

rant requirements of the Fourth Amendment. When the defendant claims that the vehicle in his possession was unlawfully impounded by the police, the prosecution has the burden of proving that the impoundment was reasonable under the totality of circumstances.

In this case, the defendant was capable of making a determination as to the disposition of the van he was driving. However, it is undisputed that the officer did not make any inquiry of the defendant before impounding the van. The first question arising is whether under the Fourth Amendment, a police officer must give a driver who is competent of making a rational disposition of the vehicle, the opportunity to make that disposition in order to justify impoundment. The answer to this question is no. What is required under the Fourth Amendment is that the impoundment be reasonable under the totality of circumstances. The officer's inquiry of the driver regarding disposition is but one of the circumstances that is considered in the court's determination of whether the impoundment is reasonable.

The Fourth Amendment does not require police to allow an arrested person to arrange for the disposal or removal of his or her vehicle to avoid impoundment. See *Colorado v. Bertine*, 479 U.S. 367, 373-74, 93 L. Ed. 2d 739, 107 S. Ct. 738 (1987) ("[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means").

The examination of Kansas case law supports the above conclusion. In *Teeter*, a policeman noticed Teeter during the early morning hours parked in a bowling alley parking lot with his foot sticking out of a window of the car. The officer approached and asked Teeter for his driver's license and proof of vehicle registration. His driver's license had expired, and the registration showed he was the owner of the vehicle. The officer had Teeter lock his vehicle, and Teeter accompanied the officer to the Hiawatha Police Department. At the station it was determined that Teeter had no insurance for his vehicle, and arrangements were made for Teeter to spend the night at a local motel. An officer later returned to the motel and obtained the keys to Teeter's vehicle. The chief of police authorized the impoundment of the vehicle on the basis that Teeter

had no driver's license or liability insurance and did not know anyone in Hiawatha who could drive the car for him. No inquiry was made of Teeter as to the disposition of his vehicle.

An inventory search of the vehicle revealed illegal drugs for which defendant was arrested the next morning. On appeal this court outlined the well-delineated exception to the probable cause warrant requirement of the Fourth Amendment and set forth the reasons for the exception.

"Under the Fourth Amendment to the U.S. Constitution, a search and seizure of evidence obtained without a warrant issued upon probable cause is *'per se* unreasonable . . . subject only to few specifically established and well-delineated exceptions.' [Citation omitted.] Inventory searches of vehicles lawfully impounded have been recognized as one of these few exceptions. [Citation omitted.] Inventory searches of vehicles serve three purposes: the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. [Citation omitted.]" 249 Kan. at 550.

*Teeter* noted that for the exception to apply, the impoundment must be reasonable:

"It is a well-known rule of law that an inventory search of a vehicle cannot be valid unless the police first obtain lawful possession of the vehicle. The police must have authorization by statute or ordinance to lawfully impound a vehicle, whether at the station house or other place of safekeeping. *If the police do not have express authority to impound a vehicle, they may still take lawful custody of a vehicle when there are 'reasonable grounds' for impoundment.* [Citation omitted.]" (Emphasis added.) 249 Kan. at 550-51.

The *Teeter* court quoted from *Boster*, 217 Kan. at 624, which set forth six examples of situations which give rise to reasonable grounds for impoundment:

" ' "(1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver, (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture." ' " 249 Kan. at 552.

The *Teeter* court also sought guidance from *Fortune,* 236 Kan. at 257, by quoting the following pertinent portion of the opinion:

" 'If the owner, operator or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable [as in the instant case] or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reason justifying impoundment exists should the officers assume control over the vehicle.' 236 Kan. at 257." 249 Kan. at 551-52.

Relying upon *Boster* and *Fortune,* the *Teeter* court concluded that all evidence must be suppressed, reasoning that Teeter was in his car, parked in a private area when he was first approached, and "[a]lthough Teeter was capable of making decisions about whether to leave his car parked or to arrange for someone else to move or tow it, he was not consulted." 249 Kan. at 552.

The ultimate decision in *Teeter* may have created some confusion regarding the requirements of the Fourth Amendment. We believe that all previous cases relied upon by *Teeter* as well as *Teeter* itself resolved the issue concerning impoundment by considering the totality of circumstances to determine whether impoundment was reasonable. However, we note that at least one jurisdiction concluded that Kansas had elevated the need to consult with a capable driver as to disposition of his or her vehicle to a Fourth Amendment constitutional requirement. See *Benson v. State,* 342 Ark. 684, 690 n.1, 30 S.W.3d 731 (2000) ("[T]he Supreme Court of Kansas seemed to find a Fourth Amendment right to have an opportunity to dispose of the vehicle rather than submit to its impoundment, but there is no reference to *Bertine,* [479 U.S. at 373-74] and little discussion other than reference back to earlier Kansas cases. *State v. Teeter,* 249 Kan. 548, 819 P.2d 651 [1991].").

Perhaps our court has placed too much reliance upon the opportunity of a driver to dispose of the vehicle rather than submit to its impoundment. However, a careful reading of *Teeter* as well as other decisions by this court on the subject establish that im-

poundment is lawful if there are "reasonable grounds" for impoundment. Those earlier decisions from this court do not create a Fourth Amendment right to a police consultation regarding the disposition of the vehicle before impoundment may be lawful. Consultation is but one factor, although an important factor to be considered among the totality of the circumstances in the determination of whether impoundment is reasonable.

One of our more recent cases has recognized this principle. In *Bornholdt*, 261 Kan. 644, the police were searching for the defendant in connection with a murder investigation. An officer saw him driving his vehicle on the street and stopped him. The officer took him to the police station for questioning and impounded his vehicle. The defendant was arrested at the station and the police conducted an inventory search of his vehicle. The *Bornholdt* court reviewed *Boster*, *Fortune*, and *Teeter* before concluding:

"[I]n this case the record indicates Bornholdt's car was stopped in a lane of traffic and had to be moved to a private driveway in order to prevent it from obstructing traffic. There is no factual basis in the record indicating Bornholdt attempted to make any disposition of the vehicle. The police were clearly obligated to take custody of it, have it impounded, and, ultimately, have it properly and lawfully inventoried." 261 Kan. at 657-58.

The court found the facts were similar to *Fortune* because the defendant was taken away from his vehicle by the police and his vehicle was left unattended. The court concluded that the facts showed no indication that the vehicle was unlawfully impounded. 261 Kan. at 658.

As stated above and as demonstrated in *Bornholdt*, the determination of whether an impoundment is lawful in a case such as the one we now consider is not dependent upon consultation with the defendant about disposition, rather, the law in Kansas is and has been that such a determination is based upon the totality of the circumstances of the given case.

The facts of this case establish that reasonable grounds for impoundment existed. The van was illegally parked in a rural intersection and the defendant's lawful arrest left the vehicle unattended. Department policy dictated that the vehicle be impounded under this situation. The location of the vehicle, a rural intersec-

tion, did not render itself to an immediate lawful disposition of the van. The defendant told officers that no one was around and he lived in another city. Although the defendant was "readily available" and may have been able to suggest an alternative disposition, he did not object or offer any alternatives. As reasonable grounds existed for impoundment, officers were not required to consult the defendant about an alternative disposition. The district court properly denied the motion to suppress on this ground.

Before leaving this issue, we note that additional statutory grounds existed for the impoundment of the van the defendant was driving. On April 22, 2004, this court issued an order instructing the parties in this case to discuss the effect of K.S.A. 8-1569 and K.S.A. 8-1570 on this issue, as neither the parties nor the Court of Appeals relied upon this authority in their arguments or analysis.

K.S.A. 8-1569(a) provides in relevant part:

"Outside a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway."

In this case, the defendant clearly violated K.S.A. 8-1569 when officers discovered him sleeping in the van parked near the middle of the road at a rural intersection. Although not discussed at the suppression hearing, Deputy Fletcher testified at the preliminary hearing that the van was idling in drive when he first discovered the defendant. The court, thus, needs to determine whether this violation of K.S.A. 8-1569 provided the officers with express statutory authority to impound the van under K.S.A. 8-1570.

K.S.A. 8-1570 provides:

"(a) Whenever any police officer finds a vehicle in violation of any of the provisions of K.S.A. 8-1569, such officer is hereby authorized to move such vehicle, or require the driver or other person in charge of the vehicle to move the same, to a position off the roadway.

"(b) Any police officer is hereby authorized to remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway,

bridge, causeway, or in any tunnel, in such position or under such circumstances as to obstruct the normal movement of traffic.

"(c) Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:

(1) Report has been made that such vehicle has been stolen or taken without the consent of its owner;

(2) The person or persons in charge of such vehicle are unable to provide for its custody or removal; or

(3) When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay."

Subsections (a) and (b) of this statute apply to the facts in this case. Subsection (a) authorizes the officer to choose between three options to move the vehicle off of the roadway: (1) The officer is authorized to move such vehicle, (2) the officer may require the driver to move the vehicle, or (3) the officer may require some other person in charge of the vehicle to move the vehicle to a position off the roadway. It does not provide that the officer must consult with the driver or other person in charge of the vehicle before choosing to move the vehicle himself.

As the officer did not have to consult with the defendant under this subsection, the question then becomes whether authority to move the vehicle "off the roadway" includes allowing an officer to impound the van rather than just moving it to the side of the road. The other subsections of 8-1570 provide the officer with the authority to move the vehicle to "a place of safety" or "to the nearest garage or other place of safety." K.S.A. 8-1570(b), (c).

Regardless of this difference in language among the subsections, Deputy Fletcher testified that the rural intersection involved in this case was made up of gravel roads, with fields on all four corners, and the district court concluded that no evidence was presented that the deputy could have legally parked it alongside a country road. Based on this evidence, Deputy Fletcher had no choice but to have the vehicle towed away in order to move it "off the roadway."

Subsection (b) provides the officer with authority to move an unattended vehicle illegally left standing on a highway. The vehicle

in this case was illegally sitting in the middle of the intersection pursuant to K.S.A. 8-1569. As discussed above, the defendant's arrest effectively rendered the van unattended. As such, the officer had authority to impound the vehicle under this subsection as well. While it is true that the officer did not rely upon the above statutory authority, the above statutory provisions serve as additional authority for the lawful impoundment of the defendant's van.

(2) The Search

The defendant contends that the search was somewhat of a ruse based upon the way the inventory was conducted. However, inventory searches conducted pursuant to standard police procedures are reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 372, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). Still, the search must be for the purpose of establishing an inventory:

"[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.' [Citation omitted.]

"But in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion. '[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.' . . . The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." *Florida v. Wells*, 495 U.S. 1, 4, 109 L. Ed. 2d 1, 110 S. Ct. 1632 (1990).

The defendant argues the inventory search in this case was simply a pretext to conduct an investigatory search because the officer did not list every item of value in the van (tools, CDs, glasses, two silver dollars, CD player, tape deck, speakers), and he did not give the defendant any alternative options regarding the disposition of the vehicle. It was correctly noted by the trial court that there is no evidence in the record suggesting that the officers had a hidden agenda as to the search. The officers had never come into contact

with the defendant, did not recognize the van, and had no reason to suspect the defendant of hiding contraband in the van.

The deputy contacted the towing company and performed the inventory search pursuant to department procedure. He testified that he had conducted previous inventory searches and it was his practice to only list those items of value. The inside of the van was very cluttered making it possible that some items of value were overlooked.

Officers are permitted to exercise judgment in conducting an inventory search and it does not have to be conducted in an all or nothing fashion. The officers properly used their discretion in listing a CD case, miscellaneous pictures, a Kansas tag, miscellaneous clothing, and videotapes. The district court, who was in the best position to judge credibility, found the deputy's testimony credible. The Court of Appeals correctly declined to invalidate the search based on the deputy's discretionary determination of what constituted a valuable item. As such, the defendant has not established that the inventory search was a ruse for an investigatory search.

Affirmed.

BEIER, J., concurring. I concur with the majority's result on both issues in this case and with the rationale that supports its result on the second issue.

I also concur in the following rationale for its result on the first issue: K.S.A. 8-1569 and 8-1570(a) and (b) authorized the investigating deputies to enter the van and move it, thereby necessitating an inventory search for the protection of all concerned.

I would not reach the majority's alternative rationale for its result on the first issue. I have misgivings about "reasonable[ness] under the totality of circumstances" as adequate support for an impoundment that will necessitate an inventory search. We do not permit general reasonableness alone to justify a warrantless search; and I do not want to be too hasty to permit it to support the prerequisite for such a search.

Moreover, even if reasonableness is the only test, I think it usually will be reasonable for law enforcement to consult with a defendant capable of consulting on the disposition of a vehicle made

"unattended" only by the defendant's arrest. If there is no controlling statute or exception to the warrant requirement that permits law enforcement to enter the vehicle, then the defendant retains a limited expectation of privacy in its interior. I am not sure a highly malleable reasonableness test adequately safeguards that expectation.