NOT DESIGNATED FOR PUBLICATION

No. 115,370

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MICHAEL ADAM HALL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed August 19, 2016. Affirmed.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Stephen J. Atherton*, of Atherton & Huth, of Emporia, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and WALKER, S.J.

POWELL, J.:  The State appeals the district court's grant of Michael Adam Hall's motion to suppress evidence derived from an inventory search of his vehicle. The district court found law enforcement's impoundment of Hall's vehicle was contrary to the Lyon County Sheriff Department's (Sheriff's) impoundment policy, making the impoundment and subsequent inventory search unreasonable. While we agree with the State that the impoundment was not contrary to the Sheriff's impoundment policy, under the totality of the circumstances, we still find the impoundment unreasonable, thus rendering the inventory search improper. Accordingly, we affirm.

1

On October 22, 2015, Deputy Heath Samuels stopped Hall for driving on a suspended license. Samuels, also a member of the narcotics task force, had been investigating Hall since August 2014 and knew Hall's license was suspended. Samuels turned on his lights to make the stop; Hall turned into a private parking lot, parked the car, and climbed into the backseat of the vehicle while the passenger moved to the driver's seat. The parking lot was private property and had a no parking sign posted, yet local traffic used the space at times as an alleyway.

Samuels first made contact with Hall and arrested Hall for driving on a suspended license. Samuels located a pistol on Hall, and Hall informed him there was another gun in the vehicle. Hall was in legal possession of these firearms. Officer Dominick Vortherms of the Emporia Police Department, who was also present at the time of the stop, then read Hall his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Vortherms also made contact with the passenger and requested proof of insurance for the vehicle from her. She was unable to produce proof of insurance and was arrested for "possible warrants." Proof of insurance was later found during the inventory search of the vehicle.

Samuels impounded the vehicle. He testified this decision was based on the Sheriff's impound policy which indicated that if the person driving or in control of the vehicle was taken into custody, the vehicle may be impounded. He also testified that Hall's disclosure of an additional firearm in the vehicle and where the vehicle was parked influenced his decision to impound Hall's vehicle. Samuels did not give Hall the opportunity to grant another authority to remove the vehicle because Hall had invoked his right to an attorney. Later in the encounter, however, Samuels elicited information about contraband located at Hall's residence after Hall had invoked his right to an attorney but before such representation arrived. This questioning occurred prior to Hall's transfer to

2

the Lyon County Jail and before Hall's vehicle was towed from the scene. Samuels conducted the vehicle's inventory search which produced the proof of insurance for the vehicle, seven firearms, ammunition, a plastic bag filled with white crystal, white pills, and digital scales.

Hall filed a motion to suppress all evidence derived from the inventory search, arguing the search was illegal because the impoundment of his vehicle was unreasonable. The district court stated that based on the testimony, law enforcement impounded the vehicle pursuant to the Sheriff's impound policy but, after reviewing the factual scenarios provided in the policy, found there was nothing in the policy to support the impoundment. Because none of the factual circumstances from the Sheriff's impound policy were present in Hall's case, the court ruled the impoundment of the vehicle was an unreasonable seizure, thus rendering the subsequent inventory search also unreasonable. The district court suppressed all of the evidence derived from the inventory search.

The State timely appeals.

DID THE DISTRICT COURT ERR IN GRANTING THE MOTION TO SUPPRESS?

We review a district court's granting of a motion to suppress using a bifurcated standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). We review the district court's factual findings to determine whether they are supported by substantial competent evidence while the ultimate legal conclusion is reviewed de novo. 284 Kan. at 70. In reviewing the district court's factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A search and seizure of evidence conducted without a warrant is

3

"per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). One of these few exceptions is inventory searches of lawfully impounded vehicles conducted pursuant to standardized policy procedures. *State v. Teeter*, 249 Kan. 548, Syl. ¶¶ 1, 2, 819 P.2d 651 (1991). Inventory searches serve three purposes: (1) the protection of the owner's property while in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

An inventory search of a vehicle is valid only if the police first obtain lawful possession of the vehicle as authorized by statute or ordinance. *State v. Boster*, 217 Kan. 618, 624, 539 P.2d 294 (1975), *overruled on other grounds by State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984). If express authority to impound the vehicle does not exist, law enforcement may still take

> "lawful custody of a vehicle when there are 'reasonable grounds' for impoundment. [Citations omitted.] . . . [T]he following [are] examples of what might be considered reasonable grounds for impoundment:

> > '. . . [T]he necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of

forfeiture. . . . [Citations omitted.]'" 217 Kan. at 624 (quoting *State v Singleton*, 9 Wash. App. 327, 332-33, 511 P.2d 1396 [1973]).

The State has the burden to prove the reasonableness of the impoundment under the totality of the circumstances. *State v. Shelton*, 278 Kan. 287, 293, 93 P.3d 1200 (2004).

While the State does not assert that the impoundment of Hall's vehicle was expressly authorized by statute or local ordinance, the State does complain the district court's finding that the impoundment was not consistent with the Sheriff's impoundment policy, thus rendering the impoundment unreasonable, is unsupported by substantial evidence. We agree.

The district court referred to sections 3 and 4 of the Sheriff's impoundment policy and then reviewed the factual scenarios provided in those sections of the policy to conclude that the facts in the present case did not match any of those scenarios, meaning the impoundment was not pursuant to the policy and therefore was unreasonable. While we acknowledge the Sheriff's impoundment policy is cumbersome, and even by the State's admission not well drafted, section 8.d.ii. of the policy clearly allows for the impoundment of a vehicle when the owner or operator has been arrested. That section of the policy states in relevant part:

> "8. Vehicle may be impounded for the following reasons:
> . . . .
> d. Other
> > i. When a vehicle, because of faulty equipment, is determined to be a hazard
> > ii. *If the owner/operator has been arrested.* The arresting officer may turn the vehicle over to a third person at the operator's request
> > iii. At the request of the owner/operator." (Emphasis added.)

5

As it is uncontroverted in the record that the owner/operator—Hall—was arrested, it was error for the district court to conclude that the impoundment of the vehicle was not in accordance with the Sheriff's impoundment policy.

The district court's erroneous finding notwithstanding, compliance with the Sheriff's impoundment policy is just one factor to consider in evaluating the reasonableness of the impoundment. See *State v. Branstetter*, 40 Kan. App. 2d 1167, 1172, 199 P.3d 1272, *rev. denied* 289 Kan. 1281 (2009). The State argues the impoundment was reasonable because of the vehicle's location, the lack of proof of insurance, and the admission by Hall that there was a gun in the car. We will examine each of these factors as they bear on the reasonableness of the impoundment.

First, regarding the location, the State argues that even though the vehicle was parked on private property, there was a no parking sign posted and the area frequently served as an alleyway for traffic. While the record supports those contentions, the record contains no evidence that the vehicle would have hampered such traffic or would have been a safety hazard of some kind.

Second, as to inability of the passenger to produce proof of insurance for the vehicle, the State argues that the officers had no reason to believe the vehicle could be lawfully operated on a public roadway and cites *State v. Bennett*, No. 108,616, 2013 WL 3970199 (Kan. App. 2013) (unpublished opinion), *rev.* denied 299 Kan. 1271 (2014), for support.

In *Bennett*, after the defendant was pulled over for speeding, law enforcement determined the vehicle lacked proper registration and Bennett's driver's license was suspended. Without consulting the defendant, law enforcement ordered the vehicle to be towed and impounded. The inventory search revealed cocaine in the center console of the vehicle. Relying on *United States v. Hannum*, 55 Fed. Appx. 872 (10th Cir. 2003), the

6

*Bennett* panel held that given the fact the vehicle had expired registration and the defendant did not have a valid driver's license, the vehicle could not be lawfully operated on the highway and, therefore, the impoundment was reasonable. 2013 WL 3970199, at *2-3.

In *Hannum*, Detective Scott Higgins of the Labette County Sheriff's Department spotted a vehicle without proper registration being driven by Hannum and activated his patrol car's emergency lights. Hannum pulled into the parking lot of a convenience store and parked. In response to Higgins' inquiries, Hannum replied that the car belonged to Tina Tollette and that he had no registration documents or proof of insurance. The sheriff's department had information that Hannum was living with a woman named Tina, who Higgins assumed was the same person, and had received information a few days earlier that Hannum's home contained a methamphetamine laboratory. Apparently Higgins was unable to contact Tina as the owner of the vehicle. Based upon the lack of proper registration and proof of insurance, Higgins decided to impound the vehicle and conduct an inventory search. Higgins and another detective found a shotgun and drug paraphernalia that tested positive for methamphetamine.

Hannum moved to suppress the evidence found in the car on the grounds that the impoundment was improper, principally arguing that he should have been given the opportunity to arrange for the proper disposition of the car. The Tenth Circuit Court of Appeals rejected this argument, holding that "impoundment constitutes a proper exercise of [law enforcement's community caretaking] function when a motorist cannot produce proper registration or proof of insurance." 55 Fed. Appx. at 876.

While it is true that both *Bennett* and *Hannum* support the proposition that a failure to be able to legally operate a vehicle on public roads constitutes reasonable grounds for impoundment, the record does not support such a finding here because the facts of the present case are different from the cases relied upon by the State as there is

7

insufficient evidence in the record to show Hall's car was not properly registered or insured at the time of the stop. Under Kansas law an owner of an uninsured vehicle is not permitted to allow the operation of the vehicle upon a Kansas highway, a person is not permitted to knowingly operate an uninsured vehicle upon a Kansas highway, and an operator of a vehicle is required to produce evidence of financial security on demand. K.S.A. 2015 Supp. 40-3104(b), (c), and (d)(1). However, the failure to provide proof of insurance is not the same as failing to insure a vehicle, and a person who produces evidence of financial security that was in effect at the time of the stop within 10 days of the citation or arrest cannot be guilty of any of the provisions cited above. K.S.A. 2015 Supp. 40-3104(e).

Undermining law enforcement's actions here is the fact that neither officer asked Hall whether his vehicle was insured or asked him to produce proof of insurance as required by law. Had they done so, Hall likely could have easily produced proof of insurance. The State defends the officers' decision to ask the passenger instead on the grounds that Hall had invoked his *Miranda* rights. But demanding that a driver produce proof of insurance is not asking that person for a statement; it is asking the person to produce a document. See *People v. Goodin*, 257 Mich. App. 425, 430, 668 N.W.2d 392 (2003) (motorists have no Fifth Amendment privilege to refuse to produce their driver's license, registration, and name and address). Given the fact that neither officer inquired of the owner and operator of the vehicle (Hall) to produce proof of insurance, and as the inventory search ultimately uncovered the required proof of insurance for the vehicle, we are unwilling to agree that law enforcement's initial inability to obtain proof of insurance from the passenger prior to the vehicle's impoundment supported its conclusion the vehicle could not be operated on a public highway, thereby justifying the vehicle's impoundment.

Third, the State also argues that the presence of a gun in the vehicle required officers to secure the vehicle for safety reasons. The record shows that Hall voluntarily

8

informed the officers that he had a gun on him and that there was a gun in the vehicle. The officers took possession of the gun that was on Hall, and the inventory search found several guns in the trunk. However, if the law enforcement officers were truly concerned about their safety or the safety of others, they could have searched the passenger compartment of the vehicle as a search incident to arrest and seized any weapons found inside. *State v. Julian*, 300 Kan. 690, 694, 333 P.3d 172 (2014) ("officer 'as a contemporaneous incident of that arrest' may search the passenger compartment of the vehicle"), *overruled on other grounds by State v. James*, 301 Kan. 898, 349 P.3d 457 (2015). Any weapons in the trunk were secure inside. Given that K.S.A. 2015 Supp. 75-7c01 *et. seq.*, the Kansas Personal and Family Protection Act, allows citizens to freely carry weapons unless they fall under a specific prohibition, and nothing in the record shows Hall could not legally possess firearms, we agree with Hall that allowing the car to remain with the weapons locked inside the trunk did not constitute a security problem justifying the impoundment.

Finally, the State argues that the fruits of the search are admissible under the doctrine of inevitable discovery. Specifically the State argues that if the vehicle had remained on private property due to Hall's arrest, the property owner very likely could have contacted the police department to have the vehicle removed, after which the vehicle would have been subject to an inventory search. However, this issue was not raised before the district court, and issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Even if we could address the merits of this argument, we would reject it as mere speculation. See *Nix v. Williams*, 467 U.S. 431, 444 & n.5, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984) ("inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment").

Accordingly, we find the impoundment of Hall's vehicle to be unreasonable under the totality of the circumstances presented and, therefore, affirm the district court's

9

suppression of the evidence obtained by the inventory search of the vehicle. See *State v. Bryant*, 272 Kan. 1204, 1210, 38 P.3d 661 (2002) ("[T]he trial court will not be reversed if it is right, albeit for the wrong reason.").

Affirmed.

* * *

ARNOLD-BURGER, J., concurring: I agree with my colleagues that the judgment of the district court must be affirmed. Based on the totality of the circumstances, the impoundment of Hall's vehicle was clearly unreasonable. But I write separately simply to express my belief that the district court's finding that the impoundment was inconsistent with the Lyon County Sheriff Department's own impoundment policy *was* supported by substantial evidence, contrary to the majority's finding herein. I believe the officers' actions were inconsistent with the policy, thus further bolstering the overall finding that the items obtained from the subsequent inventory search must be suppressed.

The Sheriff's impoundment policy is not complicated and I would suggest not difficult to understand. It closely follows existing statutory law and caselaw, and in fact specifically cites to both in support of many of the sections. It first correctly sets out that impoundment is to be the exception, not the rule:

> "Except in cases where impoundment of a motor vehicle is mandatory under the law, required for asset forfeiture or necessary for preservation of evidence, towing and impoundment should be a last resort after all other reasonable options have been exhausted."

Next, it *requires* officers to make reasonable efforts to notify owners and give them an opportunity to move their vehicles to an area of safety.

10

> "Officers *shall* make reasonable efforts to notify owners and provide them the opportunity to remove the motor vehicle to a place of safety when practicable." (Emphasis added.)

It next lists eight specific situations in which a vehicle may be impounded, none of which apply to the facts of this case, nor does the State argue they apply. And it lists one situation in which vehicles must be impounded—when the engine number or identification number have been destroyed, indicating the vehicle may have been stolen. That provision is also not alleged to be applicable to the facts of this case.

In case the policy was not clear before, it reiterates that if the owner is readily available and can make a decision about the disposition of the vehicle the owner is free to do so.

> "If the owner, operator, or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle, then he may do so. If the person responsible for the vehicle desires the vehicle be left lawfully parked upon the streets or it be turned over to some other person's custody, then, absent some other lawful reason . . . , the wishes of the owner *must* be followed." (Emphasis added.)

We then come to the part of the policy relied upon by the State. Section 8 of the policy lists the reasons a vehicle may be impounded. Highly summarized, a vehicle may be impounded if it is used in a crime or contains evidence of a crime, if it is crashed, if it is abandoned, if it is a hazard, if the owner requests it be impounded, or "[i]f the owner/operator has been arrested. The arresting officer may turn the vehicle over to a third person at the operator's request." These are the *reasons* a vehicle may be impounded. But to read this section independently from the rest of the policy makes one wonder why the other provisions are even necessary. For example, if a vehicle can be impounded whenever a person is arrested, why does Section 3(f) only permit

11

impoundment if the person is arrested *and* the vehicle is on the highway? By interpreting Section 8(d)(ii) the way the State insists we do, Section 3(f) becomes superfluous. Instead the document must be read as a whole. Section 8 must be read as the reasons that underlie the circumstances listed in Section 3. In fact, all of the reasons in Section 8 are manifested in some way in the circumstances in Section 3.

And the primary consideration remains, as stated in the very first two provisions of the policy, impoundment is the last resort and the officer is required to make all reasonable efforts to allow the owner to remove the vehicle to a place of safety. Our Supreme Court has made it clear that consultation with the driver regarding disposition of the vehicle, although not the only factor, is an important factor to consider in determining the reasonableness of the impoundment decision. *State v. Shelton*, 278 Kan. 287, 295-96, 93 P.3d 1200 (2004). Clearly the Sheriff's policy deems it an important factor, if for no other reason than the mandatory language it uses and the number of times it mentions it in the policy.

So although the majority finds the evidence insufficient to support the district judge's finding that the police violated the Lyon County Sheriff Department's impoundment policy, I believe the evidence was sufficient and believe that this further bolsters the finding of this court that the motion to suppress was properly sustained.