NOT DESIGNATED FOR PUBLICATION

No. 122,789

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

STEVEN R. BURTON JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; CHARLES M. HART, judge. Opinion filed December 23, 2020. Reversed and remanded.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Nika A.J. Cummings*, of Cummings & Cummings, LLC, of Wichita, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Steven R. Burton Jr. was stopped by police on Highway 54 for speeding. Burton pulled over and parked on the shoulder of the two-lane highway. The police discovered Burton was driving with a suspended license and arrested him. Without giving Burton an opportunity to make other arrangements—because he could not legally drive the car away, the police decided to impound Burton's vehicle. The police conducted an inventory search of the vehicle and located drugs and drug paraphernalia. Burton moved to suppress the evidence and the district court granted his request. The State appeals. Because we find that under the totality of the circumstances the deputy had the

1

right to conduct an inventory search of Burton's vehicle, we reverse and remand the case for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 22, 2019, Deputy Taylor Cordell f/k/a Taylor Ratcliff, pulled over Burton for speeding on Highway 54 at around 11 p.m. At the location where Burton was pulled over Highway 54 has two-lanes and a shoulder. After stopping Burton, Cordell learned that Burton's driver's license was suspended.

Burton explained to Cordell that he was coming from Little River, Kansas, and was headed to Missouri. Cordell knew that Little River was "a pretty decent distance from [Greenwood] county."

Based on standard practice and department policy, Cordell arrested Burton after learning that he was driving with a suspended license. Because Cordell pulled Burton over while he was driving down the highway, Burton's vehicle was parked on the shoulder of Highway 54. Cordell did not ask Burton if there was someone that could move his vehicle after arresting him. Nor did Cordell ask Burton to move his vehicle because of his suspended license.

At a later hearing Cordell explained that Burton's vehicle was "where it needed to be" for purposes of a traffic stop, but that "there's really nowhere safe off of a highway to park." While the vehicle was being stopped, the police lights were alerting drivers of its presence. But once Burton was arrested, Cordell determined that Burton's vehicle would need be towed because it was an unattended vehicle on the side of the road and the driver had been arrested. In addition, Cordell explained that there were safety concerns because the vehicle was not very visible and could pose a danger to other drivers.

2

Due to department policy, an inventory of what was inside Burton's vehicle was taken. While inventorying the items in the car, Cordell located a baggy of a white powdery substance and a glass pipe in the center console. The white substance tested presumptively positive as methamphetamine. Burton later told Cordell that he thought he had smoked all the methamphetamine and did not think there was any left in the vehicle.

Burton was charged with unlawful possession of a controlled substance, unlawful possession of drug paraphernalia, and driving while license suspended. Burton moved to suppress the evidence obtained from the inventory search, arguing that Cordell did not have the authority to impound, and consequently inventory the contents of, Burton's vehicle under the circumstances.

At a hearing on the motion, Burton explained that if he had been given the opportunity to call someone to move his vehicle there would have been several options available to him.

After hearing arguments from the parties, the district court granted Burton's motion. The court found that Cordell had the option to issue a notice to appear, as opposed to being required to arrest Burton, and that under the totality of the circumstances there was not enough justification to impound Burton's vehicle. The State filed a timely notice of interlocutory appeal under K.S.A. 2019 Supp. 22-3603.

ANALYSIS

On appeal, the State argues that the district court erred in suppressing the evidence because, when considering the totality of the circumstances, Cordell properly inventoried Burton's vehicle.

3

*Our standard of review is mixed.*

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion, however, is reviewed using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

*The district court erred in suppressing the evidence.*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). An inventory search is a recognized exception to the probable cause warrant requirement. When a defendant claims that his or her vehicle was unlawfully impounded by the police, the State bears the burden of proving that impoundment was reasonable under the totality of the circumstances. *State v. Shelton*, 278 Kan. 287, 292-93, 93 P.3d 1200 (2004).

In *Shelton*, police found the defendant sleeping in the driver's seat of his vehicle in the middle to right-hand side of a rural road. The defendant's driver's license was revoked. The police arrested the defendant for driving without a valid license. The police did not ask the defendant whether there was anyone in the area that could move his vehicle for him. Per department policy, the police decided to have the defendant's vehicle towed. An inventory search was conducted, and illegal drugs were found in the vehicle. The defendant moved to suppress the evidence, arguing that the vehicle was unlawfully impounded. The district court denied the motion and the defendant appealed.

On appeal, the Kansas Supreme Court was quick to make it clear that the Fourth Amendment does not require a police officer to give a driver the opportunity to determine the disposition of his or her vehicle after his or her arrest. Instead, the Fourth Amendment only requires that "the impoundment be reasonable under the totality of circumstances." 278 Kan. at 293. The court went on to list "six examples of situations which give rise to reasonable grounds for impoundment" including:

"'(1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture.'" *Shelton*, 278 Kan. at 294 (quoting *State v. Teeter*, 249 Kan. 548, 552, 819 P.2d 651 [1991]).

However, the court did not go so far as to say that an impoundment would *only* be appropriate in one of those six circumstances. Moreover, while consultation with the driver is not a requirement, the court did note that it is "an important factor to be considered among the totality of the circumstances in the determination of whether impoundment is reasonable." 278 Kan. at 296.

When considering the circumstances in *Shelton*, the Kansas Supreme Court held that the district court did not err in denying the motion to suppress. The court noted that the vehicle was "illegally parked in a rural intersection and the defendant's lawful arrest left the vehicle unattended." 278 Kan. at 296. The vehicle was in the road and an "immediate lawful disposition" was not available. 278 Kan. at 297. Further, the defendant informed the police that no one else was around and that he lived in another city. While the defendant may have been able to offer an alternative solution, he did not do so and the

police were not required to inquire whether there was an alternative. Thus, the court held, the district court did not err. 278 Kan. at 297.

Here, the district court looked to the six situations set out by the Kansas Supreme Court in *Teeter* and referenced in *Shelton* when determining whether reasonable grounds existed to impound Burton's vehicle under the totality of the circumstances. The district court was not required to do so and could have examined the totality of the circumstances. But because the case can be decided based on one of the listed factors, it is unnecessary to look at all of the surrounding circumstances. See 278 Kan. at 294.

Because the first five factors do not apply, the court focused on the final situation—whether the vehicle was impoundable by statute. The State argues that the district court placed too much weight on the situations referenced in *Shelton*. As the State sees it, "the [district] court incorrectly read *Shelton* . . . as an exclusive list of reasons authorizing the towing of a vehicle."

We believe the State's interpretation of the district court's understanding of the law is correct. The district court stated:

> "Pursuant to Deputy Cordell's testimony, the deputy had the option to issue a notice to appear, as opposed to making arrest at the scene. Therefore, where the statutory criteria has not been satisfied under the totality of the circumstances, the finding in the first complete paragraph of Page 293 of State vs. Shelton does not apply.
> "Subsequently, the Court finds that the defendant's motion to suppress should be granted and the Court does so."

The district court's determination that Cordell had the option to issue a notice to appear is correct. See K.S.A. 2019 Supp. 8-2106(a)(2); K.S.A. 2019 Supp. 8-2107(d); K.S.A. 2019 Supp. 8-262. But the court's conclusion that the option to issue a notice forecloses the ability to impound the car was incorrect.

6

"Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:

. . . .

(3) When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge of the district court without unnecessary delay." K.S.A. 8-1570(c)(3).

Essentially, K.S.A. 8-1570(c)(3) allows the police to impound a vehicle after an individual is arrested for an offense where the officer is required to take the arrestee before a judge without unnecessary delay. The fact that Cordell had the option to issue a notice of appearance is immaterial here because she arrested Burton. And that decision does not seem unreasonable under the totality of the circumstances.

Burton was alone in the car, with no one to take immediate possession of it. The officer could not let him drive away because Burton had no valid driving privileges. The car was tagged in Colorado and he had a suspended Colorado driver's license. He told the officer he was coming from Little River, Kansas, and headed to Missouri. We take judicial notice that four to five miles east of Eureka, Kansas, in Greenwood County—where the stop occurred—would be a little over midway between Little River, in Rice County, and the Missouri border, with roughly 100 miles to go. See Kansas Department of Transportation, Kansas County Map, http://www.ksdot.org/Assets/wwwksdotorg/maps/11X17Counties.pdf (last visited Dec. 16, 2020). Burton did not indicate that he had any business, friends, or plans in Greenwood County. He was simply passing through. Accordingly, the deputy had no reason to believe Burton may have easy access to someone who could quickly take possession of the car.

The deputy also cited safety concerns. The stop was at 11 p.m. on a two lane highway with a shoulder. She indicated that if they were to leave the vehicle on the shoulder, it would be a danger to passing motorists.

7

"Um, at this time of night, it's not very visible; it doesn't have any lights on it. So any driver coming behind it or approaching it, um, it's—based on my experience, it's not uncommon for people to swerve, last minute, when they see a vehicle come up suddenly."

The deputy also testified that it was department policy to impound all vehicles when the driver is arrested as allowed by K.S.A. 8-1570. There was no testimony to suggest that she had any reason to believe there was contraband in the car at the time she started her preliminary inventory search. This was clearly not a subterfuge to search the vehicle. See *Colorado v. Bertine*, 479 U.S. 367, 375-76, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987) (officer properly could exercise discretion in allowing driver to park and lock vehicle or in impounding vehicle where the decision to impound was not a subterfuge to search the vehicle in furtherance of an investigation of suspected criminal activity).

Burton testified that had he been asked he would have called his cousin, in El Dorado, to take possession of the car. He indicated that El Dorado was about 40 minutes away. Even if the officer had not ordered the vehicle towed, she had the ability to search the vehicle for valuables to protect the department from any claims of theft. That is what she was doing when she located the bag with white powder. Assuming she had allowed Burton to call his cousin *and* (1) the cousin agreed to take possession of the vehicle, *and* (2) the cousin had a valid driver's license, *and* (3) the cousin had someone who could immediately drive her to Greenwood County after midnight to retrieve the car, the officer was not required to sit on the side of the road monitoring the car, alerting oncoming traffic to its location until the cousin arrived.

And finally, an officer is not required to consult a defendant about the disposition of the vehicle. Whether an impoundment is lawful in a case is based upon the totality of the circumstances, not whether the defendant was consulted about the car's disposition.

"The first question arising is whether under the Fourth Amendment, a police officer must give a driver who is competent of making a rational disposition of the vehicle, the opportunity to make that disposition in order to justify impoundment. The answer to this question is no. What is required under the Fourth Amendment is that the impoundment be reasonable under the totality of circumstances. The officer's inquiry of the driver regarding disposition is but one of the circumstances that is considered in the court's determination of whether the impoundment is reasonable." *Shelton*, 278 Kan. at 293.

Moreover, this court has previously determined that an arrest for driving while suspended qualifies as an arrestable offense justifying impoundment. *State v. Linden*, No. 118,252, 2019 WL 986183, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1068 (2019). Because impounding the vehicle was authorized by statute, the situation in this case falls squarely within one of the six examples listed in *Shelton*—"'a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture.'" See *Shelton*, 278 Kan. at 294.

Under the totality of the circumstances, Deputy Cordell's decision to impound and tow the vehicle was reasonable. Thus, the district court erred when it granted Burton's motion to suppress.

Reversed and remanded.